A

*Milton J. Frank & Associates*

ATTORNEYS AT LAW
THE PROFESSIONAL BUILDING
1831 CHESTNUT STREET
THIRD FLOOR
PHILADELPHIA, PA 19103

TEL (215) 569-9880
FAX (215) 569-0904
EMAIL: ADVICE@MJFRANKLAW.COM
WWW.MILTONJFRANK.COM

MILTON J. FRANK*
BRETT TESSLER**
KIMBERLY M. RUCH-ALEGANT**

*MEMBER OF PA, NJ & DC BARS
**MEMBER OF PA & NJ BARS

NEW JERSEY OFFICE
601 HADDON AVE., SUITE 110
COLLINGSWOOD, NJ 08108
(856) 854-3337
PLEASE REFER TO FILE NO.

00-2624

January 20, 2003

U.S. Department of Justice
Attn: Barbara Rowland, Esq.
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476

Re:    Fusaro v. United States

Dear Ms. Rowland:

Enclosed please find a copy of a report dated December 13, 2002 from Randall N. Smith, M.D., which I intend to introduce into evidence at the upcoming arbitration.

Thank you for your time and attention.

Very truly yours,

BRETT TESSLER

BT/awh

Encl.



# DELAWARE VALLEY ORTHOPEDIC AND SPINE CENTER, P.C

December 13, 2002

Randall N. Smith, M.D.
 Orthopedic Surgery

Milton Frank, Esq.
3rd Floor
1831 Chestnut Street
Philadelphia PA 19103

RE: **Marisa Fusaro**
Account No: **3525**
Date of injury: **9/18/00**

Dear Mr. Frank:

This is a note on Marisa Fusaro who I saw on December 13, 2002.   In addition to seeing her I saw records from:

- Mercy Suburban Hospital
- Dr. Larry Wolf
- NovaCare

The history is that Ms. Fusaro sustained an injury on September 18, 2000, the day that she was seen at Mercy Suburban Hospital.  She had a slip and fall incident injuring her right foot, ankle, left elbow and hand.  Apparently, she missed a step and fell at a post office.  She actually states that there was a hole that she stepped into causing her to fall.  She did have a prior history of being a kidney donor and having only one kidney and being told not to take anti-inflammatory medications.  She was initially referred to Dr. Wolf who, several days later on September 21, 2000, applied the cast.  That was maintained for about six weeks and then she was started on physical therapy at NovaCare.  She continued have problems in the foot up until the time of discharge on December 21, 2000.  According to Dr. Wolf's records, she was x-rayed on October 31. 2000, showing some healing of the fifth metatarsal base fracture.  The last visit of November 17, 2000, indicates gradual resumption of normal activities and a recheck as needed.  Again, he mentions a fracture that did not cause any significant healing problems.  At the time she states that she remembers her foot remained swollen.

The physical therapy notes from NovaCare indicate that she had continued discomfort in the foot which was aggravated with walking.  This was noted on the last visit of December 21. 2000, but apparently further treatment was not received because of some insurance problems.

She presents today with ongoing pain in the right outside part of the foot up around the ankle and all the way up the leg to the region of the right hip.  This is worse when she tries to walk.  She has had to wear



Page 2
RE: Marisa Fusaro
DOS: 12/13/02

special shoes most of the time. When she tries to walk in a normal pair of shoes, she had increasing pain. She was forced to go back to work, which is standing all day which makes the pain much worse. She is not taking any medications, again because of the fact that she only has one kidney. She did get relief from the therapy for a period of time, but has not gotten it for quite a while.

Clinically, there is tenderness at the fracture site and just dorsal to that coming up and around the lateral malleolus. The pain is increased with inversion of the ankle as well as with direct local pressure over the dorsal aspect of that fifth metatarsal. There is a bony prominence at the fracture site with a fullness throughout that area all the up and including the lateral ankle. The discomfort goes underneath and behind the lateral malleolus. She also has lost some ability to dorsiflex that ankle and the pain is increased with resisted movement. Straight leg raising causes some discomfort up into the hip area with some tenderness over the right ischium aggravated with rotational movements of the right hip as well. She is walking with an altered gait favoring that right leg with a short stance phase.

I do not have any diagnostic studies, but it is obvious from the record that Marisa sustained a fracture of the fifth metatarsal. Whether this went on to non-union or malunion or she just has some metatarsalgia and injuries to the ligamentous structure causing a chronic ankle sprain and peroneal tendinitis, it is difficult to assess on examination alone. As a result of her gait dysfunction, it is obvious that this is causing problems up and down the leg and including her back. I anticipate that this will only worsen over type, and ideally I would recommend an MRI of the right ankle and foot to assess the status of these damaged structures. At that point, we can determine whether we could give her any relief with surgery, injections, medications, or maybe a visit to a podiatrist for some type of molded support.

It is my opinion that Marisa has sustained an injury to her right foot, ankle, and leg as a direct result of the September 18, 2000, slip and fall injury. She has been left with a chronic and permanent problem with a poor prognosis for recovery. Further treatment would include and MRI of the foot and the ankle at $1200 a piece, an EMG and nerve conduction study of the right leg at about $1200, a re-evaluation at a doctor's office running $75 to $100 and then referrals to appropriate treatment sources which would probably include a visit to a podiatrist for orthotic which would run about $250 or $300 which would have to be reordered and refit every several years. Resumption of the physical therapy or membership in an aquatic facility could probably run about $600 a year and special shoes which could run several hundred dollars a year, and being a female we have to at least supply two or three different styles and colors.

I reviewed the prior treatment and it was fair, reasonable, and necessary as were the charges which likewise were fair, reasonable, and necessary. I can't rule out the possibility of the need for injections



Page 3
RE:  Marisa Fusaro
DOS:  12/13/02

which run $75 to $100 which could be repeated two or three times a year or even surgery which would run $6,000 to $8,000 for some type of reconstruction type of procedure to that area.  I need the diagnostic studies in order to determine which procedure would be most beneficial, but at this point I would lean towards the podiatric consult, the orthotics and diagnostic studies as the first line of evaluation.

All of my above opinions have been given with a reasonable degree of medical certainty.  If I can be of any further assistance, please feel free to contact me.

Sincerely yours,

Randall N. Smith, M.D.

RNS/jfs
(Dictated but not read)

B

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

MARISA FUSARO,                          )
                                        )
        Plaintiff,                )
                                        )
   v.                                   )          No. 02-CV-4698
                                        )
UNITED STATES OF AMERICA,               )
                                        )
        Defendant.                )

## UNITED STATES' FIRST SET OF INTERROGATORIES

TO:   Ms. Marisa Fusaro
      c/o Milton J. Frank, Esquire
      Milton J. Frank & Associates
      1831 Chestnut Street, 3rd Floor
      Philadelphia, PA 19103

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant United States hereby serves upon plaintiff Marisa Fusaro the following Interrogatories. Answer each interrogatory separately, fully in writing and under oath, in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court. Serve a copy of your answers upon Barbara Rowland, Assistant United States Attorney, 615 Chestnut Street, Suite 1250, Philadelphia, PA 19106, counsel for United States, within thirty (30) days of service.

## DEFINITIONS

The following definitions apply wherever the defined word appears in United States' First Set of Interrogatories except as otherwise indicated.

a.     "You" or "your" refers to the plaintiff, individually or collectively and, in the appropriate context, includes all persons acting in the interest of or on behalf of the plaintiff in

this action, including but not limited to agents, representatives, investigators, consultants and attorneys.

b.      "<u>Person</u>" refers to natural persons as well as other entities, including but not limited to any partnership, corporation, trade association, government agency, or any other entity or any director, officer, employee or agent thereof.

c.      "<u>Document</u>" has the meaning set forth in Rule 1001 of the Federal Rules of Evidence, and also refers to any and all printed, typewritten, handwritten, electronic, or drawn matters, of whatever character, the original, any reproductions and drafts thereof, all nonidentical copies, and summaries or compilations of any kind including, but not limited to, notes, letters, telegrams, messages (including reports, notes and memoranda of telephone conversations and conferences), calendar and diary entries, records, data, computerized data, maps, handwritten notes, graphs, tables, tabulations, charts, correspondence, illustrations, publications, and transcripts, in whatever form maintained including, but not limited to, mechanical, electronic, or photographic means such as punch cards, tape recordings, or microfilms.  All attachments or enclosures to a document are deemed to be part of such document.  If it is claimed that a document has already been provided to the United States, identify the document and the person who has custody or control of the document, or to whom it was given.

d.      "<u>Identify</u>" with respect to a person means to provide the full name, the current or last known home address and telephone number, and the current or last known business address or headquarters and telephone number.

e.      "<u>Identify</u>" with respect to documents means to state the date or approximate date; its title or heading, nature (e.g., letter, telegram memorandum), substance, and location, with

sufficient particularity to enable it to be easily identified by its custodian in response to a

subpoena duces tecum or a motion to produce; the name, official business position and business

address of its present custodian, its author and any other person who assisted in preparing it, the

person who signed it or over whose signature it was released, and the person to whom it was

addressed and any other recipients. In lieu of providing the information requested above, the

document may be identified by attaching a true and legible copy thereof to your answers to these

interrogatories, together with a notation indicating to which interrogatory or interrogatories, and

subparts thereof, the writing or document is responsive.

     f.     "<u>Describe in detail</u>" means to provide with respect to any act, occurrence,

transaction, event, statement, communication or conduct (hereinafter collectively "act") all facts

concerning any such act, including but not limited to, a description of each act, the date, the

location, and the names and addresses of all persons involved.

     g.     "<u>Refer or Related</u>" means consisting of, embodying, summarizing, describing,

mentioning, or in any way pertaining to.

     h.     "<u>And</u>" as well as "<u>or</u>" shall be construed both disjunctively and conjunctively so as

to bring within the scope of each of these interrogatories any information that otherwise might be

construed to be outside the scope of any interrogatory.

     i.     When an interrogatory asks for the factual "basis" for any contention, statement,

claim, allegation, belief or conclusion, the response shall include, but not be limited to, the

description, identification and enumeration of:

          (1)     all facts relating in any way to the contention, statement, defense, claim,

allegation, belief or conclusion;

(2)    each and every document that records, reflects or relates in any way to such facts;

(3)    each and every statement or item of testimonial or other evidence that relates in any way to such facts; and

(4)    the name of each and every person consulted, relied on or with knowledge for the substantiation of such contention, statement, defense, claim, allegation, belief or conclusion.

j.    "Incident" or "occurrence" means any event or events that are the basis of your lawsuit unless otherwise specified.

## INSTRUCTIONS

a.    When information or a document is requested, the request includes information or documentation in the possession, custody, or control of the plaintiff, her attorneys, investigators, agents, persons under contract with the plaintiff, or other representatives of the plaintiff.

b.    If a claim of privilege is asserted concerning any information sought or any document requested, identify as to each privileged document or communication:

(1)    its date;

(2)    its author(s) and the business title or position of its author(s);

(3)    its recipient(s) and the business title or position of its recipient(s);

(4)    its number of pages;

(5)    its subject matter;

(6)    the legal basis upon which the plaintiff claims privilege; and

-4-

(7)     the specific portion of the interrogatory to which the communication and/or document is responsive.

c.     Each interrogatory and subpart thereof is to be answered separately and fully. However, these interrogatories are not intended to require duplicative answers.  To the extent that duplication may appear to be required it will suffice if reference is made to other relevant answers already supplied.

d.     When an exact answer to an interrogatory is not known, state the best estimate available, state that it is an estimate, and state the basis of such estimate.

e.     If any of the information furnished is not within the personal knowledge of the plaintiff, identify the person who provided such information to the plaintiff and to whom the information is a matter of personal knowledge, if known.

f.     If, after a reasonable and thorough investigation, using due diligence, you are unable to answer any interrogatory, or any part thereof, on the ground of lack of information available to you, specify in full and complete detail why the information is not available to you and what has been done to locate such information.  In addition, specify what knowledge or belief you have concerning the unanswered portion of any interrogatory and set forth the facts upon which such knowledge or belief is based.

g.     Answers or documents are to be labeled to indicate the interrogatory to which they respond.

h.     Whenever necessary to provide a complete answer to those interrogatories, or to bring within the scope of an interrogatory the broadest possible range of information, the singular

form of a word shall be interpreted as plural and references to one gender shall include the other

gender.

      i.      These interrogatories shall constitute a continuing request for information so as to

require responses to be supplemented in accordance with Rule 26(e) of the Federal Rules of Civil

Procedure.  Any supplemental responses shall be furnished to the United States as soon as

possible after the new information becomes available.

## INTERROGATORIES

1.      Describe in detail the incident that occurred on September 18, 2000 in the parking lot of the United States Post Office on 651 Township Line Road, Blue Bell, PA ("the Blue Bell Post Office") described in paragraph 5 of the Complaint that is the subject of your Complaint in this action.

2.      Identify any and all persons who have knowledge of the incident that occurred on September 18, 2000 at the Blue Bell Post Office that is the subject of your Complaint in this action.

3.      Identify any and all persons who you claim knew, or should have known upon reasonable investigation, of the alleged hole and/or depression in the parking lot of the Blue Bell Post Office on September 18, 2000.

4.      Identify and describe any and all occasions on which you had previously been to the Blue Bell Post Office before September 18, 2000.  If unable to do so with specificity, estimate the number of occasions on which you had been to the Blue Bell Post Office before September 18, 2000, and state the time of day that you went to the Blue Bell Post Office; whether you or someone else drove a vehicle into the parking lot of the Blue Bell Post Office; and whether you had previously seen the holes and/or depressions in the Blue Bell Post Office parking lot.

5.      Identify and describe the clothing that you wore when you fell at the Blue Bell Post Office on September 18, 2000; the shoes that you wore, including the brand name and model of the shoes and the height of the shoes' heels; any items that you might have been carrying, including but not limited to, package, purse, handbag, briefcase, or other type of bag; and any glasses, including sunglasses, that you might have been wearing.

6.    (a) State the name and addresses of each person or organization by whom or with which plaintiff was employed (including periods of self-employment) during the ten-year period immediately preceding September 18, 2000, and, with respect to each, state:

(i) the dates of such employment; (ii) the nature of the work or duties performed; (iii) the place or places where such duties were performed; and (iv) the regular weekly, biweekly, or monthly compensation received from each employment during each year, the basis for computing the same and the total amount of any additional compensation paid on account of overtime or holiday work during each year together with the amounts and basis for receipt of any special bonuses.

(b) If the plaintiff was self-employed during a part or all of the ten-year period immediately preceding September 18, 2000, state the name under which and the address at which the plaintiff conducted such business, profession or trade and the nature thereof, and the period of time during which so engaged.

(c) If the answer to subparagraph (b) is in the affirmative, state the net income received by the plaintiff from such business, trade or profession during each of the ten calendar years immediately preceding September 18, 2000, as shown by Federal or state income tax returns for those years.

(d) If it is claimed that plaintiff was unable to work for any period of time and thereby sustained any loss of income prior to or after September 18, 2000, for which plaintiff contends the United States may be responsible, state fully the period of time during which the plaintiff was unable to work, the amount claimed to have been lost, and the nature and source thereof.

7.    (a) State whether either plaintiff sustained any injuries, illnesses or disabilities during the ten-year period prior to September 18, 2000.

(b) If your answer is in the affirmative, describe such injuries, illnesses and disabilities fully and state with respect to each (i) when and where the injury, illness or disability was sustained and for what period of time the plaintiff suffered therefrom; (ii) list the name and address of each medical practitioner or other person or hospital, clinic, sanitarium, rest home or other institution visited by the plaintiff or in which the plaintiff was confined for purposes of consultation, diagnosis, X-ray, treatment or other care.

(c) If your answer is in the affirmative, describe any pre-existing injuries that were aggravated by the incident on September 18, 2000, at the Blue Bell Post Office and state with respect to each the extent to which the pre-existing injury was aggravated.

-7-

8.      (a) Other than the injuries complained of in this lawsuit, state whether either
        plaintiff sustained any injuries, illnesses or disabilities since September 18, 2000.

        (b) If your answer is in the affirmative, describe such injuries, illnesses and
        disabilities fully and state with respect to each (i) when and where the injury,
        illness or disability was sustained and for what period of time the plaintiff
        suffered therefrom; (ii) list the name and address of each medical practitioner or
        other person or hospital, clinic, sanitarium, rest home or other institution visited
        by the plaintiff or in which the plaintiff was confined for purposes of consultation,
        diagnosis, X-ray, treatment or other care.

9.      State whether plaintiff has been involved in any litigation at any time, brought by
        him or against him, other than the present suit, or has submitted administrative
        claims to any federal agency.

10.     For each lawsuit or claim identified in Interrogatory No. 8 identify: the name of
        the case; the docket number; the court in which the action was filed; the nature of
        the action; and the current status or final disposition.

11.     With respect to every medical practitioner (including physicians, nurses,
        therapists, counselors, or any other type of mental or physical health care
        provider) who examined or treated plaintiff for any of the allegedly suffered
        problems as a result of the allegations in the complaint, please state:

        (a)     the name, address and specialty of each medical practitioner;
        (b)     the injury or symptom for which the examination or treatment was
                performed;
        (c)     the type of treatment or examination, including any test or physical
                therapy;
        (d)     the date of each examination or treatment;
        (e)     the inclusive dates of any hospitalization;
        (f)     the location and name of the custodian of any medical reports, records, or
                x-rays relating to the treatment or examination; and
        (g)     whether you intend to call any of the listed physicians or other medical
                personnel as a witness at trial. If so, please explicitly indicate whom you
                intend to call and briefly state the subject matter of his or her testimony.

12.     (a) State the name and address of each person whom you expect to call as a fact
        witness and as an expert witness in the trial of this action.

        (b) With respect to each such expert witness, state: (i) his or her field of
        expertise; (ii) any sub-specialties of the witness within his field of expertise;
        (iii) the subject matter on which he is expected to testify; (iv) the substance of the

facts and opinions to which he is expected to testify; (v) a summary of the grounds for each of the opinions to which the expert is expected to testify; (vi) the name and date of any treatises, books, articles, essays, or other writings, published or unpublished, by the expert relating in any way to the subject matter on which he is expected to testify.

For each published article and essay, state the title of the book, journal, or other work in which it can be found and the name of the publisher.

13.    Identify and itemize in detail the basis for your computation of the amount of damages for which judgment is sought in your complaint in this action.

14.    (a) Has any investigation of the incident on September 18, 2000 at the Blue Bell Post Office been made by you or your attorney or any employee of yours or any other person on your behalf or by any insurance company or other person or organization?

(b) If your answer to (a) is in the affirmative, state the name and address of each such person or organization conducting each such investigation and the date or dates thereof.

15.    Describe in detail and state the factual basis for each and every act and/or omission on the part of the United States and/or its employees, agents and/or servants which you contend constituted negligence, recklessness and carelessness as alleged in paragraph 7 and, in particular, specify the failures alleged in paragraph 7 (a) through (j).

As to each and every act and/or omission, state separately the following:

(a)    The person performing or failing to perform it.
(b)    The exact time you contend it was or was not performed.
(c)    The circumstances under which you contend it was or was not performed.
(d)    The specific manner in which you contend it constituted negligence.
(e)    What you contend should or should not have been done instead.
(f)    The specific manner in which you contend such altered performance would have been non-negligent.
(g)    The specific manner in which you contend such altered performance would have avoided the injuries and damages complained of.
(h)    Whether you contend the performance or non-performance of the act and/or omission violated any applicable standard of care or performance and, if so, as to each contended violation, state the following:
    (i)    The standard of care and/or performance involved.

-9-

(ii)    The specific manner in which you contend the performance or non-performance of the act and/or omission violated the standard of care and/or performance.

(iii)    The specific manner in which you contend the violation led to or resulted in the injuries and damages complained of.

(iv)    What you contend should have been done or not done instead so as to comport with the standard of care and/or performance.

Please complete the Authorization for Release of Medical Records attached to this document and return to Assistant United States Attorney Barbara Rowland.

Respectfully Submitted,

PATRICK L. MEEHAN
United States Attorney

Barbara Rowland
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8311 Telephone
(215) 861-8349 Facsimile

-10-

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of November, 2002, I caused a true and correct

copy of the foregoing United States' First Set of Interrogatories to be served by first class mail,

postage prepaid, upon the following:

>Milton J. Frank, Esquire
>Milton J. Frank & Associates
>1831 Chestnut Street, 3rd Floor
>Philadelphia, PA  19103

Barbara Rowland

## AUTHORIZATION FOR RELEASE OF MEDICAL RECORDS

I, _____, hereby request that all medical records, including,

but not limited to, notes of treatment, progress notes, evaluations, inpatient or out-patient

records, correspondence of any kind, referrals and/or any reports received or generated from

referrals, insurance information, physicians' orders, prescriptions, nurses' notes, x-ray reports, x-

rays, lab studies, history intake notes, discharge summaries, memoranda, cards or charts

reflecting treatment, invoices and receipts relating to bills paid or unpaid, and any other

information relating to any medical examination or treatment rendered to me be provided to

Barbara Rowland, Assistant United States Attorney, Civil Division, United States Attorney's

Office for the Eastern District of Pennsylvania, 615 Chestnut Street, Suite 1250, Philadelphia,

PA 19106, or her designated representative.


Dated:                              _____
                                    Signature of Authorizing Person

                                    _____
                                    Name (print or type)

                                    _____
                                    Address

                                    _____

                                    _____
                                    Social Security Number

C

00-2624

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA


MARISSA FUSARO                    :

                                 :

          vs.                    :

                                 :        NO. 02-CV-4698

UNITED STATES OF AMERICA         :


### PLAINTIFF'S ANSWERS TO DEFENDANT,
### UNITED STATES OF AMERICA'S FIRST SET OF INTERROGATORIES


1.  Plaintiff arrived at the post office in a vehicle driven by her friend, Elisa. When they parked, their car was next to an empty handicapped spot on the driver's side, and a vehicle on the passenger's side. When Plaintiff came out of the post office, the car that was parked on the passenger's side of the vehicle had left. Plaintiff had just stepped down off the sidewalk onto the parking lot when her right foot went down into a depression. She fell forward and banged her head and injured both arms.

2.  Elisa Colletti, Plaintiff's friends and family, employees of the post office.

3.  Objection. Requests information that Plaintiff does not possess access to. Without waiver of the foregoing objection, every employee at the post office, especially the ones that maintain the properties, knew about the holes.

4.  This was Plaintiff's first visit to the Blue Bell post office.

5.  Objection. Plaintiff does not specifically recall what she was wearing that day, however, she believes she was wearing pants and a blouse with shoes that had a one to one and-a-half inch heel, and was carrying a purse.

6.  Plaintiff was a consultant at Strawbridge's. She lost work from September 18, 2001 until November 21, 2001. She earned $13.45 per hour, working five days a week for approximately 37.5 hours. However, Plaintiff also lost commission income.

7.  None.

8.  No.

9.  Plaintiff was involved in divorce proceedings approximately 20 years ago.

10.  N/A.

11.  Plaintiff treated at Mercy Suburban Hospital, 2701 DeKalb Pike, Norristown, PA 19401, NovaCare, 100 Presidential Blvd., Bala Cynwyd, PA 19004, Dr. Lawrence Wolfe, Lankeneau Medical Building East, Suite 650, 100 E. Lancaster Avenue, Wynnewood, PA 19096.  See medical records.

12.  Plaintiff's treating physicians.  All other witnesses are objected to, as it goes to trial strategy.

13.  See Plaintiff's initial disclosure.

14.  Plaintiff had pictures taken at the scene which were previously provided to Defendant.

15.  See Plaintiff's Complaint.

MILTON FRANK & ASSOCIATES

BY: _____
        BRETT TESSLER, ESQUIRE
        Attorney for Plaintiff

D

*Milton J. Frank & Associates*

ATTORNEYS AT LAW
THE PROFESSIONAL BUILDING
1831 CHESTNUT STREET
THIRD FLOOR
PHILADELPHIA, PA 19103

---

TEL (215) 569-9880
FAX (215) 569-0904
EMAIL: ADVICE@MJFRANKLAW.COM
WWW.MILTONJFRANK.COM

November 6, 2002

MILTON J. FRANK*
BRETT TESSLER**

*MEMBER OF PA, NJ & DC BARS
**MEMBER OF PA & NJ BARS

NEW JERSEY OFFICE
601 HADDON AVE., SUITE 110
COLLINGSWOOD, NJ 08108
(856) 854-3337
PLEASE REFER TO FILE NO.
00-2624

Barbara Rowland Esq.
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476

RE:   Marisa Fusaro vs. United States Of America
      Civil Action No. 02-CV-4698
      ------------------------------------------------------------------------

Dear Ms. Rowland:

Enclosed herewith please find Plaintiff, Marisa Fusaro's Required Disclosures Pursuant To Federal Rule Of Civil Procedure 26 A, regarding the above-captioned matter.

Very truly yours,

MILTON J. FRANK

MJF/yg
Enclosures

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MARISA FUSARO                          :

                                       :

                                       :
            vs.                              Civil Action No. 02-CV-4698
                                       :

UNITED STATES OF AMERICA               :

                                       :


PLAINTIFF, MARISA FUSARO'S REQUIRED DISCLOSURES
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26 A


(A)   ADDRESS AND TELEPHONE NUMBER OF EACH INDIVIDUAL LIKELY TO HAVE
      DISCOVERABLE INFORMATION THAT THE DISCLOSING PARTY MAY USE TO
      SUPPORT ITS CLAIMS OR DEFENSES:

Plaintiff, Marisa Fusaro

Elisa Colleddi, 8146 Evergreen Court, Blue Bell, Pennsylvania,
      19422 Phone: 215-591-3887

Agents, servants, workmen or employees of the United States Postal
      Service

All of Plaintiff's treating physicians.   Please see attached
      medical bills and reports.


(B)   ALL DOCUMENTS, DATA, COMPILATIONS AND TANGIBLE THINGS THAT ARE
      IN POSSESSION, CUSTODY OR CONTROL OF THE PARTY THAT THE
      DISCLOSING PARTY MAY USE TO SUPPORT ITS CLAIMS OR DEFENSES:

Please see attached medical bills and reports.

See attached photos of Marisa Fusaro

See attached investigative report of accident, investigative
      Services, Inc., dated October 10, 2000., along with attached

photographs
See attached U.S. Postal Service Receipt dated September 18, 2000
   in the amount of $6.60 and signed by Marisa Fusaro

See attached consumer guide to postal rate and fees with the name
   of postmaster and supervisors on it


(C)  COMPUTATION OF ANY CATEGORY OF DAMAGES CLAIMED BY THE
     DISCLOSING PARTY:

NovaCare (11/21/00 - 12/21/00)            $    2,611.25
Dr. Lawrence Wolf (9/21/00 - 11/17/00)             610.00
Mercy Suburban Hospital                            620.00

TOTAL MEDICAL EXPENSES:                   $    3,847.25

Wage Loss (9/18/01 - 11/21/01 @ $13.45 per hour  $  4,907.00
   plus commission, 5 days per week @ 37.5 hours
   per week)

TOTAL EXPENSES CLAIMED:                   $    8,754.25

Please see attached medical bills and reports.

Plaintiff also claims non-liquidated damages such as pain and
suffering.

                         MILTON FRANK & ASSOCIATES


                         BY:
                         MILTON J. FRANK, ESQUIRE
                         Attorney for Plaintiff